O’NIELL, Chief Justice.
 

 Eugene Serpas stands convicted of the crime of perjury and is under sentence of imprisonment in the penitentiary for a term not less than one year nor more than three years. He is appealing from the verdict and sentence.
 

 The charge in the indictment is that Ser-pas willfully swore to a falsehood when, on the trial of a policeman named Ernest Goodwin, charged with murder, Serpas was
 
 *1077
 
 called for service on the jury, and was questioned on his voir dire by the prosecuting attorney as to his being qualified to serve .as a juror in the case. In consequence of the answers given by Serpas to the questions that were asked him on his voir dire, he was accepted and served on the jury in the trial of Goodwin, which resulted in a mistrial. Goodwin was tried again for murder, and on the second trial was convicted of manslaughter.
 

 The accusation against Serpas, stated specifically, is that he willfully gave a false answer when he was asked, on his voir dire, in the prosecution of Goodwin, whether he knew “any member of his [Goodwin’s] family,” and answered, “No, sir.” All of the questions that were asked Serpas, touching his qualifications to serve as a juror in the Goodwin case, and the answers ;.given by Serpas, are copied in the indictment in this case, against Serpas. The most pertinent questions that were asked Serpas, and that were answered in the negative, in the examination of him on his voir dire in the Goodwin case, were: (1) whether he knew Goodwin or any member of his family; (2) whether any one had spoken to him or had approached him in .any manner concerning the Goodwin case ; (3) whether he knew any of the attorneys defending Goodwin, or any of the attorneys prosecuting him; and (4) whether he knew of any reason why he might not make a fair or impartial juror. He was never asked whether he knew any one related to Goodwin, either by blood or by marriage. The only question that he was accused of answering falsely was the question whether he knew any member of Goodwin’s, family, viz.: “You don’t know him, and you don’t know any member of his family?” His answer, “No, sir,” is denounced as a willful falsehood because, although he did not know Goodwin, he was well acquainted with — and resided in the same house with —a man named Ralph Ragas, who was a brother of Goodwin’s mother, and was married to a sister of Serpas.
 

 The only plea made by Serpas in defense of the charge of perjury was and is that he did not know that Ralph Ragas was a relation of Goodwin, at the time when he, Serpas, swore that he did not know any member of Goodwin’s family. On the trial of this case, Serpas, in support of his plea, offered evidence to prove that the only cause of the mistrial in the Goodwin case was that one of the jurors, not Ser-pas, but another juror, stubbornly refused to enter into the deliberations or to discuss the case with .the other jurors after the case was submitted to them for decision. The minutes of the court, in the Goodwin case, showed that, when the jury in that case, after deliberating for seventeen hours, came into court to announce that they could not agree upon a verdict, the judge asked if they might not come to an agreement if given more time for deliberation, and that the foreman announced that they could not agree because one of the jurors refused to take part in the deliberations. The prosecuting attorney, in this case, against Serpas, offered in evidence the record of the Goodwin case, in connection with the testimony of the minute clerk, who was a witness for the State in this case
 
 *1079
 
 against Serpas; but when the attorney for Serpas began cross-examining the minute clerk, with reference to the minutes of the court in the Goodwin case, and with the avowed intention of showing that Serpas was not the juror who caused the mistrial in the Goodwin case, the prosecuting attorney objected, on the ground that he had not offered in evidence in this case the minutes of the court in the Goodwin case. The judge sustained the objection, whereupon the attorney for Serpas offered in evidence in this case the minutes of the court in the Goodwin case. The prosecuting attorney objected to the offering of any evidence to show that Serpas was not the juror whose stubbornness caused the mistrial in the Goodwin case; the objection being that such evidence would riot be relevant to the question whether Serpas had committed perjury in his statement, on his voir dire in the Goodwin case, that he did not know any member of Goodwin’s family. The judge sustained the objection; and the attorney for Serpas excepted to the ruling. Thereafter. Serpas, as a witness in this case, offered to testify that he and ten other members of the jury, in the first trial of Goodwin, voted to convict him of manslaughter, and that another member of the jury'refused to discuss the case with them. The prosecuting attorney repeated his objection to the testimony, and the judge adhered to his ruling that such evidence was irrelevant, and hence inadmissible. The judge announced also in support of his ruling that the discussions between or among the members of a petit jury in their deliberations were secrets which ought to be protected from disclosure.
 

 The first bill of exceptions to be considered is the one relating to the refusal of the judge to allow Serpas to introduce evidence to show that he and ten other members of the jury in the first trial of Goodwin voted to convict him of manslaughter, and hence that it was not Serpas but another juror who obstructed the course of justice in that case. Our opinion is that the evidence that was tendered was relevant to the question .whether Serpas willfully swore to a falsehood on his voir dire in the Goodwin case. The evidence was relevant because it would have tended to show whether Serpas had a motive for intruding himself upon the jury, by means of false swearing on his voir dire, in the Goodwin case. But, before going further into the reasons for the relevancy of the conduct of Serpas in the jury room, in the first trial of Goodwin, we must maintain — and do maintain — that the discussions among the members of a petitjury in their deliberations are not protected from disclosure when disclosure becomes-necessary to the administering .of justice-in another judicial proceeding-. This is not a case where one who was a member of a. jury claims the privilege of being protected against disclosure of what occurred in-, the jury room. Even the so-called privilege in that respect is limited to cases-, where the disclosure would be impertinent. 5 Wigmore, Ev., 2d Ed., § 2346; Jones Commentaries on Ev., 2d Ed., § 2212; 5 Chamberlane Ev. § 3707; Wharton’s Crim. Ev., 11th Ed., §§ 2078, 2119; Underhill’s Crim.Ev., 4th Ed., § 354. The rule against
 
 *1081
 
 admitting testimony to impeach the verdict of a jury is not appropriate to this case, because the jury of which Serpas was a member did not render a verdict; hence there is no verdict to be impeached. Clark v. United States, 289 U.S. 1, 18, 53 S.Ct. 465, 470, 77 L.Ed. 993, 1002.
 

 In Clark v. United States, 289 U.S. 1-20, 53 S.Ct. 465, 467, 471, 77 L.Ed. 993, Mrs. Genevieve A. Clark was adjudged guilty of criminal contempt in the District Court of the United States for the district of Minnesota, because, being called as a member of the jury panel, for examination on her voir diré, touching her qualifications to serve on the jury in the prosecution of several men charged with having used the mails in furtherance of a scheme to defraud, Mrs. Clark withheld the fact that she was at one time employed as stenographer for a corporation with which the indicted men were connected as officers. In consequence of Mrs. Clark’s concealment of the fact of her previous employment, she was accepted as a juror; and, after the case was submitted to the jury, she manifested, by her discussions with the eleven other jurors in the jury room, that she was not an impartial juror, but was apparently affected in her judgment by her former employment with the corporation of which the defendants were officers —which employment she had failed to disclose in the examination touching her qualifications to serve as a member of the jury. Eventually the presence of Mrs. Clark on the jury caused a mistrial — eleven of the jurors voting to convict the defendants, and Mrs. Clark voting for an acquittal. Thereafter she was prosecuted not for perjury, but for the criminal contempt which she had committed by falsely imposing herself upon the jury and, through that means, obstructing the administration of justice. D.C., 1 F.Supp. 747. The conviction of Mrs. Clark' was affirmed by the United States Circuit Court of Appeals for the Eighth Circuit. 61 F.2d 695. Mrs. Clark brought the case to the Supreme Court by writ of certiorari (287 U.S. 595, 53 S.Ct. 314, 77 L.Ed. 519); and the judgment of the Circuit Court of Appeals was affirmed. Although Mrs. Clark was prosecuted not for perjury, but for criminal contempt, it was observed that the question of her guilt of the offense charged depended upon whether she willfully withheld the truth when she was examined on her voir dire. In answer to the charge she denied that she had sworn to a falsehood, or willfully had withheld the fact of her previous employment by the firm of which the defendants were officers, and she pleaded “that .her vote for acquittal had been dictated by her conscience.” On the trial of the rule for contempt Mrs. Clark’s attorney objected to the government’s offer of testimony to show that'she had argued with the other jurors in the jury, room in an effort to obtain a verdict of acquittal. The objection to the testimony was that the discussions among the members of a jury in their deliberations were protected against exposure by a lawful privilege, and by a rule of public policy requiring secrecy in that respect. The objection was overruled, and the ruling was affirmed. The difference between that case and this is that in that case the evidence was offered to show that Mrs. Clark had a motive for concealing a fact that might have disqualified her for
 
 *1083
 
 service as a juror; whereas in this case the evidence was offered to show that Serpas had no such motive. To show how appropriate the doctrine of the Clark Case is to this case, we quote from the opinion delivered by Mr. Justice Cardozo, for the court, thus:
 

 “During the deliberations of the jury, after the case was finally submitted, she [Mrs. Clark] announced that since the prosecuting attorney had been unable to convince her of the guilt of the accused the other jurors could hardly be expected to do so. At times she placed her hands over her ears when other jurors tried to reason with her, and argument became useless because she was unwilling to reply. * * * The votes of eleven were for conviction. The single vote for acquittal was cast by the petitioner [Mrs. Clark]. * * * The information charges that her answers upon the voir dire examination were willfully and corruptly false, and that the effect of her misconduct had been to hinder and obstruct the trial. In response to the rule to show cause, the defendant filed an answer denying the misconduct, and alleging that her vote for acquittal had been dictated by her conscience. * * * She was intruding into a relation for which she believed herself ineligible, and intruding with a motive. The only plausible explanation is a preconceived endeavor to uphold the cause nf the defendants and save them from their doom. * * * After the trial was over and deliberations had begun, she waived aside all argument and closed her ears to the debate. She had closed her mind to it before. * * * The admission of testimony as to the conduct of the petitioner [Mrs. Clark] during the deliberations of the jury was not a denial or impairment of any lawful privilege. * * * Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world. The force of these considerations is not to be gainsaid. But the recognition of a privilege does not mean that it is without conditions or exceptions. The social' policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. * * * What was said and done in the jury room is not the gist of her wrongdoing. What was said and done in the jury room is no more than confirmatory evidence of her state of mind before.”
 

 Adverting now to the relevancy of the evidence of what was said and done in the jury room, in the first trial of Goodwin, we must bear in mind that the purpose for which the evidence was tendered was twofold; the main purpose was to show that Serpas had no object to accomplish by intruding his presence upon the jury in the Goodwin case, and hence no motive for giving a false answer to any question asked him on his voir dire. The other purpose for which the evidence was tendered, to show that Serpas was not the juror who obstructed the course of justice in the Goodwin case, was to relieve Serpas of the odium which fell upon him because the very nature of the crime for which he was prosecuted subjected him to suspicion of intruding his presence upon the jury in order to obstruct the course of justice. The first trial of Goodwin lasted three days; and the
 
 *1085
 
 deliberations of the jury — at least of eleven members of the ‘jury — lasted seventeen hours. Something like a sensation was caused when the foreman of the jury announced in open court that the reason why the jury could not agree upon a verdict was that one of the jurors steadfastly refused to discuss the case with the eleven others. The daily papers of that afternoon and of the next morning, with great headlines, referred to the scene in the courtroom as something dramatic. And, thereafter, for several days, the newspapers carried sensational stories and news items, announcing to the world that Eugene Serpas was under suspicion, and eventually under indictment, for committing perjury in order to intrude his presence upon the jury and to thwart the administering of justice in the prosecution of Ernest Goodwin for the crime of murder. It is true that the prosecuting attorney, in the present case, did not attempt to prove that Serpas was the juror whose conduct caused the mistrial in the Goodwin case. But it is also true — as a matter of common knowledge and common sense — that the jury in this case knew that Serpas was supposed to be the man whose conduct as a juror in the prosecution of Goodwin prevented his being convicted on the first trial.
 

 To say that the conduct of Serpas in the jury room, in the Goodwin case, was a matter of no importance after he had committed perjury by saying, on his voir dire, that he did not know any member of Goodwin’s family, when in fact he knew Ralph Ragas, who was an uncle of Goodwin, is to beg the question. The only question which the jury had to decide was whether Serpas knew that Ralph Ragas was related to Goodwin, when Serpas swore that he did not know any member of Goodwin’s family; and the-conduct of Serpas as a juryman in the trial of Goodwin was a matter closely relevant to that question. Assuming, for the sake' of argument, that Ralph Ragas, being an uncle of Goodwin, should have been considered a member of Goodwin’s family, notwithstanding Ralph Ragas never at any time resided in the same house with Goodwin, the question of fact on which alone depended the guilt or innocence of Serpas, in this prosecution for perjury, was whether he knew that Ralph Ragas was an uncle of Goodwin, when he, Serpas, swore that he did not know any member of Goodwin’s family. The judge observed, in his rulings upon the admissibility of certain testimony in this case, that the only evidence against Serpas was circumstantial evidence. The circumstantial evidence which the judge referred to was the fact that Serpas occupied a room in the same house with Ralph Ragas and Mrs. Ralph Ragas, and had been occupying the room in the same house with them for about fifteen years, when he, Serpas, served on the jury in the Goodwin case. That fact was not disputed. But the only witnesses whom the State produced to prove that Serpas knew that Ralph Ragas was an uncle of Goodwin were Ralph Ragas, his wife, and his two brothers, Sidney and Alphonse Ragas. None of these witnesses would say that Serpas knew that Ralph Ragas was related to Goodwin. Ralph Ragas is a mechanical engineer, employed generally by contractors, on structural work, and is away from home most of the time. He testified that he was working in Baton Rouge when the killing for which Goodwin was
 
 *1087
 
 prosecuted for murder was done in New Orleans, and that he, Ragas, remained in Baton Rouge four months after the killing. He testified that when he returned to New Orleans he called upon the mother of Goodwin and expressed his sympathy for her, hut that he did not mention the matter to Serpas. In fact, he said that he and Serpas had not been on speaking terms for six or seven years; that neither of them had ever spoken to the other during that time; and that, even before that time, there was never any companionship or intimate association between them. This testimony was corroborated by that of Mrs. Ragas and by that of Serpas. .Mrs. Ragas testified that she never visited the Goodwin’s. Sidney and Alphonse Ragas both testified that they were never acquainted with Serpas and did not even know who the man was before he was accused of perjury' in consequence of the trial of Goodwin. All of these witnesses were asked if they had ever talked to Serpas or to any other prospective juror about the Goodwin case, and their denial that they had ever talked to Serpas or to any other prospective juror about the case was not contradicted. There was no impeachment of the reputation or character of the witnesses, or of Serpas, for veracity. The evidence stands uncontradicted that his general reputation was good, and that he was never arrested or accused of any offense before he was indicted in this case.
 

 As a general rule this court has nothing to do with the evidence relating to the question of guilt or innocence of the defendant in a criminal case. We have referred to the evidence in this case because the prosecuting attorneys invoke article 557 of the Code of Criminal Procedure, which forbids the cour,t to set aside a verdict, or to grant a new trial, “unless in the opinion of the court, * * * after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice,” etc. If Serpas, as a juror on the first trial of Goodwin, voted for a verdict of manslaughter, and if ten other jurors on the first trial voted the same way, as did also the twelve jurors on the second trial, the proof of these facts, in this prosecution of Serpas for perjury, would have been very apt to convince the jury that Serpas had no motive for committing perjury on his voir dire examination. On the other hand, if Serpas voted for an acquittal, and was the only juror who voted that way, on the first trial of Goodwin, the jury who tried Serpas on the charge of committing perjury on his voir dire examination were entitled to know these facts. The error of excluding the evidence as to how Serpas and the eleven other jurors voted on the first trial of Goodwin is a matter of such importance as to compel the setting aside.of the verdict and the granting of a new trial.
 

 A bill of exception was reserved to the refusal of the judge to give the jury a special charge, requested by the attorney for Serpas, to the effect that Serpas should not be convicted unless the jury was convinced that he had made a false statement willfully. That was the same as to say that, if Serpas did not know that Ralph Ragas was related to Ernest Goodwin, when he, Serpas, stated under oath that he
 
 *1089
 
 did not know any member of Goodwin’s family, Serpas was not guilty of perjury. The judge declined to give the requested charge, on the ground that the subject was covered by his general charge to the jury. The judge did say, in defining perjury, in his general charge to the jury: “The false statement must have been corrupt or intentionally false, as well as wilful.” But that statement, which is'all that the judge said to the jury on this all-important subject, was in the midst of a long discussion to the effect that, in order for the alleged false statement to constitute perjury, it had'to be material and important. We doubt that the jury got the benefit of the judge’s brief reference to the necessity for the alleged false statement to have been made with knowledge that it was false, in order to constitute the crime of perjury. Considering that the only question that the jury had to decide ultimately was whether Serpas knew that Ralph Ragas was an uncle of Goodwin, when Serpas said that he did not know any member of Goodwin’s family, our opinion is that the jury should have been instructed very definitely on that subject, separately and apart from a discussion of any other element in the definition of the crime of perjury. The judge will have an opportunity to do that when Serpas is tried again.
 

 The third and last bill of exception was reserved to the overruling of a motion for a new trial. The only new point made in the motion is the argument that the indictment in this case is defective on its face because the only false statement attributed to Serpas is his statement that he did not know any member of Goodwin’s family; and it is not alleged either that Ralph Ragas or that Mrs. Ragas — who were the only two of Goodwin’s relations whom Serpas knew — was a member of Goodwin’s family. It is argued for Serpas that the word “family” means a collection of relations residing in the same house and under the authority of one of them. That is one of the definitions given in the Civil Code, art. 3556, subd. 12; the other definition being all of the relations who descend from a common ancestor. The indictment in this case is not defective in that respect, because immediately after the allegation that Serpas swore that he did not know Goodwin or any member of his family, is the allegation that, as Serpas then well knew, he was well acquainted and closely connected with relations and members of the family of Ernest Goodwin. There might be considerable force in this new argument of counsel for Serpas if he had urged as a defence that, although *he knew Ralph Ragas, and knew that Ralph Ragas was an uncle of Goodwin, he did not consider Ralph Ragas a member of Goodwin’s family. We cannot know now what evidence may be brought forth if Serpas is put on trial again under the indictment in this case. It is sufficient to say that the indictment is valid:
 

 The verdict and sentence are annulled, and the case is ordered remanded to the criminal district court for a new trial. or for such other proceedings as may be consistent with the opinion which we have
 
 expressed.
 

 HIGGINS, J., absent.