William T. BURTON, Joe T. Cawthorn and Marcel F. La Branche, Appellants, v. UNITED STATES, Appellee.

No. 13377.

United States Court of Appeals
Fifth Circuit.

Sept. 23, 1949.

For former opinion, see 175 F.2d 960.

Hugh M. Wilkinson, New Orleans, La., Robert S. Link, Jr., New Orleans, La., Warren O. Coleman, New Orleans, La., Frank B. Ellis, New Orleans, La., Frank J. Looney, Shreveport, La., and Gordon B. Golsan, Jr., Mansfield, La., for appellant.

Robert Weinstein, Sp. Asst. to U. S. Atty., New Orleans, La., J. Skelly, Wright, U. S. Atty., New Orleans, La., and Nicole E. Simoneaux, Lansing L. Mitchell, John N. McKay, and Amos L. Ponder, Jr., Asst. U. S. Attys., New Orleans, La., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

PER CURIAM.

It is ordered that the petitions for rehearing in the above numbered and entitled cause be, and they are hereby denied.

HUTCHESON, Circuit Judge (dissenting).

When this case was argued and decided, I was, and still am, of the opinion that the court, in restricting the cross-examination of the juror Adams, had erred. Also of the opinion, however, that the error was not prejudicial, I concurred in the judgment of affirmance.

Further consideration of the point and study of the record, on the motion for rehearing, convinces me that the ruling was not only erroneous but highly prejudicial, and that because of the error, the judgment should be reversed.

Because the treatment of the claimed error in subdivision (4) of the opinion, which deals with it is too brief for the merits of the point made to clearly appear, a fuller statement by me is appropriate.

The charge against the defendants was not that LaBranche had falsely voted for acquittal but that he and the others charged had entered into a conspiracy or agreement that he would do so. The government, nevertheless, was of the opinion that proof that LaBranche voted throughout for acquittal would be highly convincing to the jury that such a conspiracy existed. To prove that he did so vote, the government offered the juror Adams, proved by him that he knew LaBranche and that he had served with him as a petit juror in the Burton case, and then asked him the following questions:

"Q. Will you tell this jury how the defendant LaBranche voted in those deliberations? A. He voted not guilty.

"Q. At what time? A. During the entire course of the deliberations.

"Q. During the entire course—A. Of the deliberations."

The witness was then tendered to the defense and the first question asked by defendant's counsel was: "Mr. Adams, how

many others voted for not guilty?" The government objected on the ground that "it is entirely irrelevant and immaterial what anybody else did". The district judge then retired the jury and heard argument based on the case of Clark v. U.S., 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993, a case of claimed juror misconduct, and State v. Serpas, 188 La. 1074, 179 So. 1, a similar case in which the decision was based on and followed that in the Clark case.

At the conclusion of this argument, the court stated his position and adhered to it throughout, "I might say this, that you can't test the credibility of a witness on a collateral matter". After further argument by defendants that their right of cross-examination was being unduly restricted, the court said: "Well, the court doesn't mean to imply that you should be denied the right of cross-examination. You probably have the right to cross-examine the witness, *but you can't test his credibility on a collateral matter. I am convinced in my own mind that it is entirely irrelevant and it is immaterial how other jurors voted in this proceeding*". "I might make this further observation. It is certainly not the purpose of the court to shut off any cross-examination that the court considers proper. * * * I simply state at this time that I take it *it will be improper to ask the witness how the balance of the jury voted in this case. I don't think it is proper. Now, I think counsel is going to abide by the Court's ruling, and that is the only restriction I am placing on the cross-examination*." (Emphasis supplied.)

The jury was then called back and counsel for defendant asked the following question: "Mr. Adams, do you recall how Mr. Lester J. Toups voted?"

It being objected that the court had ruled on that question, the court said: "I sustain the objection and I think it is a violation of the Court's ruling. I stated quite plainly to counsel that *I didn't think the question was proper as to how any juror voted in this case*." (Emphasis supplied.)

In response to this ruling, counsel, saying, "I will change that and see if this follows the ruling?" asked the witness Adams to state whether, without stating how they voted, he remembered how each juror vot-

ed, and Adams answering that he did, asked him the following question:

"Do you remember whether or not any of those men, without naming them or saying how they voted, took one position at the first ballot and didn't change throughout? A. There were some changes. There were changes during the deliberations from the original ballot. * * * There were certain ones that might have changed, that did change.

"Mr. Byrnes: That is all."

"Mr. Byrnes: I understand it is not necessary to reserve a bill."

"The Court: Counsel is correct. As long as your position is known, the Court feels you are protected under the rules."

It is and was the contention of the defendants that had the juror been permitted to testify as to how each juror voted, his testimony would have shown that some of them voted for acquittal, some for conviction, and that when the jury was discharged, eight were for acquittal and four were for conviction. Their cross-examination limited on the wholly untenable theory that how the other jurors voted was immaterial, defendants, compelled to have the issue go to the jury on the evidence that LaBranche had voted throughout for acquittal, were deprived of their right to show that others had voted for acquittal too and that, when the mistrial was ordered, the jury stood eight to one that way. This was highly prejudicial to defendants because by the limitation put on the cross-examination, the evidence of the government as to how LaBranche had voted was given great and peculiar significance and made perhaps to have overwhelming weight in the decision of the case.

The Clark case, on which the court below relied, and on which our opinion was rested, does not support the ruling of the District Judge. It is to the contrary effect. In that case, as is shown by the opinion of the Circuit Court of Appeals, 8 Cir., 61 F. 2d 695, at page 698, the testimony disclosed not only how Mrs. Clark, but how the other jurors, had voted.

The question decided here by the District Judge on the purported authority of Clark's

case, and by this court on the same authority, that the evidence as to how the other jurors voted was immaterial, was not presented in that case, and could not have been. For there how each and all of the jurors voted was fully testified to. What and all that the Clark case decided was that in a criminal case involving jury misconduct, it was not an invasion of jury privacy but was proper to inquire into how jurors voted if the inquiry had relevance to the charge. Here, under the Clark case, supra, it was certainly proper to inquire how LaBranche voted. But it was certainly equally proper for defendants, on cross-examination, to prove, as bearing on the inquiry, how the other jurors voted.

If then we look alone to the Clark case, we find it direct authority for admitting proof as to how the other jurors voted. We do not, however, have to look to that case alone. There is also the well presented and clearly decided Serpas case from Louisiana. There in a case, as here, of claimed misconduct affecting jury service, the court flatly held that it was permissible to inquire into, and offer evidence as to, how the members of the jury voted. No one thought there or in the Clark case that it could be relevant as to how the accused juror voted and irrelevant as to how others voted. The opinion was quite the contrary, and the cases both so held.

The more, therefore, the case is considered in the light of what occurred and of the controlling authorities, the more clear it becomes that the ruling below was partial and one sided and that by it the government was given an opportunity to invade the sanctity of the jury room so far and to the extent only that it felt the inquiry would be helpful to it. Having been allowed to open the door to obtain the evidence it wanted, it was allowed to close the door and exclude the defendant from securing from the same source evidence which might be, and, according to the defendants' proffer, was, favorable to it.

I am in no doubt, that the indictment is subject to none of the complaints levelled at it, nor in any, that the evidence was ample to sustain the conviction, and that none of the other assignments of error are well taken. But the fact that the defendants are, or may be, guilty, is not entitled to, it may not be given, any weight in the decision of the point made on the restriction of Adams' cross-examination. Cf. Kotteakos v. U. S., 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624, and the host of cases following it are authority, if any authority is needed, that the right to cross-examine is a fundamental right of a defendant in a criminal case and that undue restriction of it is prejudicial error. Indeed, to permit the government, as was done here, to offer a witness and then to deny defendant reasonable cross-examination of that witness is contrary to common fairness as understood by every standard of American justice and due process of law. This being so, I am constrained to believe and to state that, in my opinion, the District Judge, in permitting the government to offer in evidence so much of what transpired in the petit juror room as suited its purpose and then denying the right to the defendant to elicit from the same witness, who knew the facts, testimony beneficial to defendants as to what went on in the jury room, committed not merely harmless, but highly prejudicial, error, for which the motion for rehearing should be granted and the judgment reversed.

I, therefore, respectfully dissent from the order denying the motion for rehearing.