COMMONWEALTH *vs.* JOSEPH BRITLAND.

Bristol. February 7, 28, 1938. — June 15, 1938.

Present: DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Evidence*, Competency, Relevancy. *Practice, Criminal,* Exceptions: whether error harmful.

After a witness for the Commonwealth at the trial of an indictment for being accessory after the fact to the crime of armed robbery had testified to statements made by the defendant in conversations with him which included admissions of facts tending to show that the defendant had assisted the principal after the crime was committed, it was error to exclude questions asked of such witness in cross-examination to bring out further statements of the defendant in the same conversations to the effect that his acts were in ignorance of the commission of the crime; and the error was not rendered harmless by later testimony by the defendant in his own behalf that he made such further statements to the witness for the Commonwealth.

At the trial of an indictment charging the defendant with being accessory after the fact to an armed robbery, where the defendant in his testimony had admitted that he had thrown away a "gun" used in the robbery, it was prejudicial error to refuse to allow him further to testify that he had done so at the request of the principal's father, who had found the "gun" and had stated to the defendant that he would not trust his son with it; and also that the defendant did not throw it away at the request of the principal.

INDICTMENT, found and returned on June 5, 1936.

A verdict of guilty was returned before *Dowd*, J. The defendant filed an appeal with assignments of error.

*H. E. Clarkin,* (*J. T. Farrell* with him,) for the defendant.

*F. E. Smith,* Assistant District Attorney, for the Commonwealth, submitted a brief.

DOLAN, J. The defendant was tried at one time under two indictments, one charging him with being an accessory before the fact to the crime of armed robbery, and the other with being an accessory after the fact to the same crime. He pleaded not guilty to each indictment. The jury returned a verdict of not guilty on the first indictment and a verdict of guilty on the second indictment. The robbery took place on April 9, 1936, in the city of Fall River, and it appeared in evidence that the principals involved were Vernon Boitano and James Connors. The former had disappeared and the latter had pleaded guilty as a principal and had been sentenced at the time of the trial of the defendant. The case comes before us by appeal under the provisions of G. L. (Ter. Ed.) c. 278, §§ 33A–33G, with a summary of the record, a transcript of the evidence and assignments of error.

Twenty-two of the defendant's twenty-four assignments of error are based on forty-three exceptions taken by him during the course of the trial. Exceptions 1, 9, 10, 11 and 18 may be grouped since they are all exceptions to the exclusion of questions asked on cross-examination by the defendant's attorney and the same fundamental question is involved in the determination of whether the judge erred in excluding them.

The prosecution called Joseph Andrews, a police officer of the Fall River police department, who testified at length to conversations had by him with the defendant in the presence of other police officers after the defendant's arrest on the second day following the robbery. In direct examination Andrews testified to statements by the defendant from which it appeared that the latter admitted driving an automobile for the principals concerned in the robbery and parking it at a designated place shortly before the robbery occurred, at the request of one of them (Boitano). The witness also testified in direct examination to statements made by the defendant relating to his meeting

with Boitano after the robbery had taken place, of his visit to Boitano's home on the evening of the day the robbery was committed, of his conduct there in connection with the destruction or throwing away of a "revolver" at the request of Boitano's father, and of his subsequent conduct in his relations with the principals preceding his arrest. Exceptions 1, 9, 10 and 11 were taken to the exclusion of questions asked of this witness on cross-examination. Exception 18 was taken to the exclusion of a question proposed in the cross-examination of another police officer, who was called by the prosecution and who testified to substantially the same conversations as had been given in evidence by the witness Andrews. The defendant's defences were that when he drove the automobile and parked it at the request of Boitano he did not know that a crime was to be committed and that thereafter in all that he did, he did not know that the principals had actually committed the robbery.

Exception 1. During the cross-examination of Andrews the defendant's attorney asked him whether, in the course of the conversation with the defendant which the witness had testified to in direct examination, the defendant told him "that Boitano asked him to go to . . . [a certain house] on Highland Avenue . . . and there help him to deliver a box of oranges." Upon objection the question was excluded and the defendant excepted. The obvious purpose of this question, read in the light of the record, was to show that the defendant's association with the principals on the morning of the day on which the robbery occurred and preceding its commission was natural and innocent.

Exception 9. The witness Andrews was asked by the defendant's counsel whether the defendant stated to him that, when he got there (to the home of Boitano's father on the evening of the day of the robbery), Mr. Boitano "was very angry because he found a revolver." The witness answered, "Yes, sir." He was then asked whether the defendant stated to him that at that time Boitano, senior, asked Boitano (one of the principals) "where he got this

gun." The prosecuting attorney objected, and the question was excluded, the judge ruling, in response to the request of the defendant's counsel to save his exception, that "Any self-serving statements that you seek to put in are absolutely incompetent."

Exception 10. The witness Andrews was asked by the defendant's counsel: "At the time that you talked with Britland did he tell you that on the occasion of his driving the car he didn't know they [meaning Boitano and Connors] were going to hold up the mill?" Upon objection the question was excluded and the defendant's exception was saved.

Exception 11. Andrews was then asked by the defendant's counsel: "Did you ask him [the defendant] what he wore that day?" and the witness replied, "I did, sir." He was then asked, "What did he say he was wearing?" Upon objection the question was excluded and the defendant excepted.

Exception 18. Thomas Hutchins, a police inspector of the Fall River police department, was called as a witness by the prosecution and also testified as to the conversations which had been testified to by Andrews. He was present when they took place. On cross-examination he was asked by the defendant's counsel, "Is it true that during the entire conversation that you had with Britland that he denied on all occasions that he had any knowledge of Boitano going to commit this robbery?" The question was excluded subject to the defendant's exception.

The record discloses that the questions to which the above mentioned exceptions relate were excluded on the ground either that they were not asked to contradict the witness or that they were self-serving. While it has been held that in a criminal case a defendant has no right to introduce in evidence self-serving statements (see *Commonwealth* v. *Clark*, 14 Gray, 367, 373; *Commonwealth* v. *Cantor*, 253 Mass. 509, 512, 513) yet where, as in the instant case, the prosecution introduces statements of the defendant, tending to show that he is guilty, it is settled that he may on cross-examination elicit from the witnesses for the prosecution the

whole of the subject matter, even though statements so drawn out are favorable to him. In *Commonwealth* v. *Goddard,* 14 Gray, 402, at page 404, the court said: "No principle is more familiar than that if one party puts in evidence a part of the admissions or conversations of the other, the latter is entitled to produce, or draw out by cross-examination, testimony concerning all that was said upon the occasion referred to. This is essential to render the part produced in evidence intelligible. The force and effect of particular expressions may be, and often are, greatly modified or affected by the connection in which they are uttered." See also *Commonwealth* v. *Keyes,* 11 Gray, 323, 324, 325; *Commonwealth* v. *Trefethen,* 157 Mass. 180, 187. The obvious purpose of the questions which were excluded was to bring out the whole conversation and to elicit evidence favorable to the defendant. They related to the same subject matter as the conversations to which the witnesses for the prosecution had testified in direct examination.

We think that the contention of the Commonwealth that the exclusion of these questions was harmless, because the defendant later testified himself as to the statements made in his conversations with the police officers, which he was not permitted to draw from them in cross-examination, cannot be sustained. While he had the right, in view of the introduction of evidence of the conversations by the prosecution, to testify fully in his own examination to all the statements made by him in the course of the conversations in question (see *Commonwealth* v. *Cosseboom,* 155 Mass. 298, 300; *Commonwealth* v. *Russell,* 160 Mass. 8, 10), we think that the erroneous refusal to permit him to draw from the prosecution's witnesses additional statements made to the latter by him in the course of the conversations, cannot be said to have been cured by the admission later of his own testimony on the same subject matter. Evidence of statements favorable to the defendant coming from the lips of the witnesses for the prosecution would be apt to be given complete credence by the jury, whereas coming from the defendant alone, they might be viewed with the suspicion that they were of later invention. In the case of *Commonwealth* v.

*Goldberg*, 212 Mass. 88, 91, where the prosecution introduced evidence of the flight and avoidance of the defendants, when they had been arrested and admitted to bail, it was held that the evidence was competent and material, but that it was also competent for the defendants to show that their flight was due to some other cause consistent with innocence and what that cause was. In cross-examination questions tending to elicit evidence to show that the flight was due to causes consistent with innocence were excluded. At page 91 the court said: "This was in substance what they offered to prove, and they should have been allowed to do so. And as they made a general offer of proof to this effect and it was rejected, it does not matter that the judge rightly excluded the particular question which was put to Duggan in cross-examination before the offer of proof was made. Nor was the error cured by the fact that the defendants themselves afterwards testified as to the circumstances and occurrences which preceded their flight."

The defendant's exceptions numbered 31 and 32 come before us on his eleventh and twelfth assignments of error. Exception 31 relates to the exclusion of the following question proposed to the defendant in direct examination: "When you got upstairs, what did Mr. Boitano [senior] then say about the gun?" The defendant offered to testify that Boitano, senior, gave him the "gun" and told him that he would not trust Vernon with it, and "to take the gun and throw it in the river." The question followed the testimony of the defendant relating to events which occurred on the afternoon of the day the robbery took place, at the home of Boitano, in the presence of the latter, his father and the defendant. At that time Boitano, senior, had found a "gun" in his house and was "very mad about it." While the prosecution had put in evidence through police officers conversation had by the defendant with Boitano's father on the occasion of this visit to his home, the alleged statement of the father that he would not trust his son with the "gun" had not been brought out in any previous testimony. The question, although tending to bring out the entire conversation of the defendant with

Boitano, senior, was excluded apparently on the ground that the evidence sought to be introduced was hearsay. The evidence, however, was of vital importance to the defendant's case. The throwing away of the "gun" was an important element of the case against him and particularly with reference to the indictment upon which he was convicted. As the defendant admitted that he threw away the "gun," and the only evidence to that effect was his own statements to the police and his own testimony, it was material that he be allowed to explain his actions in that connection. By the offer of proof, set forth above, it seems clear that he was seeking to explain why he threw the "gun" away at the request of Boitano's father, and also what he understood to be the reason which prompted the former to request him to throw it away. The testimony was not offered to prove the truth of the matter asserted, but was offered to show the motives which actuated the defendant in throwing away the "gun." It was immaterial whether the statement sought to be elicited was true. Whether true or false it could have been found to have supplied a reason to the defendant for complying with the request of Boitano, senior. No hearsay problem was involved, as the use of the statement was for the purpose of explaining the defendant's actions in consequence, and not to establish the truth, of the matter asserted. See *Blanchard* v. *Child*, 7 Gray, 155, 157; *Amsden* v. *Parmelee*, 177 Mass. 522, 524; *Callahan* v. *Boston Elevated Railway*, 215 Mass. 171, 174; *Barbrick* v. *Huddell*, 245 Mass. 428, 439; Wigmore, Evidence (2d ed.) § 1766. It was material for the defendant to show that in throwing away the "gun" he was not doing it as a part of an arrangement to shield a criminal but that he was doing it as a favor to the father of his friend, for a reason given by the father which could have been found to be valid. It does not appear that this evidence was admitted at any other point in the trial. It was material and its exclusion was prejudicial error.

Exception 32 relates to the exclusion of the following question put to the defendant on direct examination: "Did Vernon Boitano ask you to throw away that gun at any

time?" The defendant answered, "No." Upon objection the judge ruled "The question and answer is [*sic*] excluded." The defendant excepted and offered to testify in reply to the question "that at no time did Vernon Boitano request him to destroy the gun." It was material for the defendant to prove that in throwing away the "gun" he was not doing so at the request of, or in an attempt to shield, a criminal but was motivated by other reasons consistent with innocence. In so far as the exclusion of this question may have been based on a hearsay objection, it was erroneous for the reasons which we have given in the discussion of the defendant's thirty-first exception. It follows that the question was improperly excluded.

We are of opinion that the exclusion of the evidence in the instances which we have discussed constituted prejudicial error. It is unnecessary to consider the defendant's other assignments of error.

> *Judgment reversed.*
> *Verdict set aside.*
> *Case remanded to Superior Court.*