BARSHOP v. UNITED STATES.
No. 13142.

United States Court of Appeals
Fifth Circuit.

Nov. 23, 1951.

Writ of Certiorari Denied Jan. 28, 1952.

See 72 S.Ct. 367.

Rives, Circuit Judge, dissented.

700

Dan Moody, Austin, Tex., Bernard Ladon, San Antonio, Tex., for appellant.

Henry W. Moursund, U. S. Atty., Joel W. Westbrook, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before McCORD, RUSSELL, and RIVES, Circuit Judges.

McCORD, Circuit Judge.

We have carefully considered appellant's motion for rehearing and motion for permission to reargue the case. The two counsel for appellant who appeared before our court to argue this case were given 55 minutes in which to be heard. We are of opinion, in view of the fact that counsel were permitted to argue for almost the maximum time allowable under the rules in support of the appeal, that the motion for oral reargument should be and the same is hereby overruled and denied.

On the merits of the case we have re-examined the entire record and voluminous briefs heretofore filed in the light of the various specifications of error now urged, and further review fails to disclose any error which prejudiced the substantial rights of appellant.

Rule 52(a), Federal Rules of Criminal Procedure, provides that "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Cf. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. We think the errors urged by appellant, if any, come clearly within the orbit of this rule.

■ Counsel for appellant contends that the ruling of the trial court with respect to the testimony of the witness Dan Dreeben required the appellant to take the witness stand in violation of his constitutional right against self-incrimination. This argument is without merit. Moreover, it is without support in the record. At the trial no intimation was ever given the court by way of objection or exception that such ruling was in prejudice of defendant's constitutional rights and that it would force him to take the witness stand involuntarily, and we may fairly assume that neither appellant's counsel nor the trial judge understood at the time that it would have such effect. The record further reveals not only that appellant's counsel had already advised the court at the time of such ruling that the defendant would take the witness stand, but also that Dreeben was later permitted to testify as desired. Furthermore, no error in this regard was even suggested until the taking of this appeal. Under such circumstances, the ruling complained of did not constitute reversible error. See Molina v. United States, 5 Cir., 162 F.2d 198; United States v. Mascuch, 2 Cir., 111 F.2d 602; Hoskins v. United States, 8 Cir., 4 F.2d 804; Miller v. United States, 5 Cir., 287 F. 864.

With reference to the further error alleged in excluding the letter accompanying the check, the case of Crawford v. United States, 212 U.S. 183, 201, 29 S.Ct. 260, 53 L.Ed. 465, is readily distinguishable under its own facts, and is not controlling upon us here. There the exculpatory letter was written immediately after the charge was made and long before the trial. Here, the check for back income taxes in the amount of $260,106.15 was not mailed to the Collector until eleven days after the indictment was returned, in spite of the fact that the defendant had been informed by his accountants long beforehand that he owed a large amount in unpaid income taxes. At the same time the self-serving letter was physically attached to the check in an obvious effort to secure its admission into evidence.

However, let us concede for the sake of argument that the exclusion of the self-serving letter accompanying the remittance was erroneous, and that the letter should also have been admitted. Such error, if any, was subsequently cured when the appellant was permitted to take the stand and testify over and over again not only as to everything the letter contained, but much more.[1]

1. Appellant testified that the indictment was the first notice he had of the amount of taxes owed:

"Q. When you went to see Mr. Carneiro, did you make any statement to Mr. Carneiro about whether you had or had not reported your pineapple account? A. I told him that I had not reported it.

"Q. Did you tell him why? A. Yes, sir.

"Q. And what did Mr. Carneiro tell you? A. Well, he studied for awhile there, but told me that he thought that I had made a mistake in not reporting it, and I would probably have an explanation to make. * * *

"Q. Then, did you make any effort to settle with the Government, if you owed the Government any money? A. I told Mr. Grossnickle to get that thing straightened out if he could.

"Q. Did you undertake to get the Government, or a Government Agent to tell you how much they claimed you owed? A. I asked Mr. Grossnickle to get together with him, and for them to give me my tax bill.

"Q. Were you ever able to find out anything about how much the Government claims you owed, until you saw the figures set forth in the indictment? A. No, sir. They never told me how much I owed."

Appellant further testified that he in good faith believed that his Mexico pineapple income was not taxable:

"Q. Had you prior to 1942, heard any discussions about whether or not such income as you understood this pineapple income to be was reportable or taxable? A. Well, in my business trips to Mexico, I heard from various sources there that earned income made from a foreign source is not reportable or taxable. * * *

"Q. When Mr. Grossnickle came to your office, in January 1946, to check your income tax return, did you have any conversation with him about that subject? * * * A. Well, I told him that that special account was a place that I took all of my surplus money from all of my other businesses and put the pineapple money in at the end of the pineapple season."

"Q. All right. And what did Mr. Grossnickle say to you in substance, as you remember? A. He asked me why I did not report that pineapple money.

"Q. And what did you tell him, if anything? A. That I was not supposed to report it. * * *

"Q. And what did he say to you? A. Well, he told me that I was wrong, and I had better get advised properly. * * *

"Q. * * * Now, have you at any time had any purpose, desire, or intention of defrauding the Government out of any of its tax money? A. No, sir.

"Q. Have you acted in this matter in good faith from the beginning to the end? A. Yes, sir. * * *

"Q. Now, the money that you have made, have you attempted in any way to hide it out, where the Government could not find it or people would not know that you had it? A. No, sir. * * *

"Q. Have you had any place to put your money other than to deposit it in the bank or banks, as people do in the normal course of business? A. That is what I did. * * *

"Q. All right. Now, have you at any time kept two sets of books, and by two sets of books, I mean one set to show the Government, and one set for you to see,

This court, in considering a somewhat similar situation in the recent case of Burton v. United States, 5 Cir., 175 F.2d 960, 965–966, rehearing denied, 5 Cir., 176 F.2d 865, certiorari denied 338 U.S. 909, 70 S.Ct. 347, 94 L.Ed. 560, has ruled: "Astorias fully testified in this trial that he was thus put in fear about his income taxes and got him a lawyer and on the lawyer's advice and in his company he went to the district attorney and told all he knew, and was allowed to pay his income tax deficiency with penalties. There was thus already in evidence without contradiction all that these lengthy documents (Grand Jury records and prior statement) would tend to show on this line. If there was error in excluding pertinent parts of them offered for this not clearly expressed purpose, we do not think it is reversible error." Cf. Dean v. United States, 5 Cir., 246 F. 568, 575; Garanflo v. United States, 8 Cir., 246 F. 910, 912–914; cf. also Hair v. United States, 7 Cir., 240 F. 333, 337; see also 3 Am.Jur., Appeal and Error p. 585, Sec. 1030 et seq.; 5 C.J.S., Appeal and Error, § 1749 et seq., page 1057; cf. York v. United States, 9 Cir., 241 F. 656, 658.

█ It therefore becomes patent that if error was committed by the court in excluding the letter accompanying the check it was error without injury, for the same proof was offered and admitted repeatedly throughout the record in defendant's own testimony and that of his witnesses. The record is replete with defendant's statements as to his good faith elicited from him through his counsel by means of improper and leading questions, to which no objection was interposed by the Government. Under such circumstances, when the evidence is so overwhelming as to appellant's guilt, it is not our province to reverse the conviction merely because the jury did not believe appellant's testimony that he never knew until after he was indicted that he owed the Government over a quarter of a million dollars. The jury listened to every phase of the evidence, heard the defendant's every explanation and listened to a charge that was not only full and fair but emphasized repeatedly that he must go free unless they believed him guilty beyond all reasonable doubt. Thereafter they brought in a verdict of guilty as charged in all five counts of the indictment. We are unable to find any reversible error in this case, and the application for rehearing is therefore

Denied.

RUSSELL, Circuit Judge, adheres to the views heretofore expressed in his concurrence in the judgment of affirmance and concurs in the order denying the petition for rehearing.

RIVES, Circuit Judge (dissenting).

The appellant was not warned by the Internal Revenue Agent Grossnickle as to

or have you just had one record of accounts with respect to each of your businesses? A. One set.

"Q. Have you at any time undertaken to dispose of any records or put any records out of the reach of the United States Government, or its agents or officers? A. No, sir."

Appellant further testified:

"Q. Did you pay income taxes in a substantial amount to the Government during the years of 1942, 1943, 1944, 1945, 1946, 1947 and 1948? A. Yes, sir, I paid, I would say, over a half million dollars.

"Q. Have you tried every time to pay the Government what you thought the Government was due, or what was due the Government? A. I always paid what I thought was due the Government.

"Q. Have you ever at any time by any act sought to cheat or to defraud the United States out of any part of its taxes? A. No, sir. I paid the Government everything I owed them every year.

"Q. Did you ask these gentlemen, when they told you that you were wrong, to calculate and find out what you owed the Government, and that you wanted to pay it—I mean the Agents that were investigating your return. A. Mr. Carneiro and myself.

"Q. "Did you tell them that? A. Sir?

"Q. Did you tell them to calculate what you owed, and you wanted to pay it? A. Yes.

"Q. In those words, or words to that effect? A. Mr. Carneiro and I both tried to get them to tell us what I owed them."

his rights, and objection was made to the introduction in evidence of any statement made or record supplied by appellant to Grossnickle. Not only were the appellant's responses to Grossnickle received in evidence against him, but even his failure to volunteer information was considered as a circumstance of his guilt as is evident from the following expressions in the fourth paragraph of our original opinion: "When the investigation began no information was given by the defendant touching his pineapple business. Moreover, the tax investigators were not informed of the different banks in which the defendant did business and kept accounts. It became necessary for the investigators for the Government to search out and ascertain the true facts touching nearly every phase of the defendant's business." [191 F.2d 286, 288.]

Under the Fifth Amendment it is not permissible to compel any person in any criminal case to be a witness against himself. Yet the law requires every taxpayer to make and file income tax returns and to permit his records of income to be examined by government agents, and such required evidence is admissible against the taxpayer in a criminal case. The ground upon which that result is justified is that by failing to claim his constitutional privilege when the information is required of him, the defendant has waived that privilege.[1] In this case the evidence does not show that any such waiver of the defendant's constitutional privilege was intentionally made, nor that either the express admissions to Grossnickle or those arising from the defendant's silence were in fact voluntary.[2]

Further consideration has convinced me also that the refusal to admit in evidence for the jury's consideration the letter copied in the opinion that accompanied the check to the Government in the sum of $260,106.-15 was not merely error but was highly prejudicial. Our holding that the letter was not admissible in evidence as a part of the *res gestae* of the remittance was based upon a false premise that the remittance went only to prove that the defendant owed at least that amount in unpaid income taxes. In the trial, that fact never was actually in dispute. The defense urged was good faith, that the defendant's conduct was not a *wilful* attempt to defeat and evade income taxes. The unexplained remittance made only eleven days after the return of the indictment carried with it the strong inference that the defendant knew that he owed the income taxes but did not see fit to make the payment until the indictment was returned. The letter undertook to explain why the remittance was made at that time and was relevant to be considered upon the question of the defendant's good faith in not having made the payment earlier. The importance of the letter as evidence related not to the uncontested issue of indebtedness, but rather to the vital issue of good faith. Upon that issue, the remittance having been proved, I think that the letter accompanying the check was admissible either as a part of the *res gestae* of the remittance, or more properly by reason of that broad rule of fair play that when a part of a conversation, document or transaction has been introduced in evidence by one party, the opposing party has a right to introduce the remainder, so that the jury may consider the entire conversation, document or transaction. Under that rule, the fact that the letter was self-serving did not render it inadmissible.[3]

The government considered the defendant's remittance of over a quarter of a million dollars delinquent income taxes made just after the return of the indictment as a

1. Shushan v. United States, 5 Cir., 117 F.2d 110, 117, 133 A.L.R. 1040; Nicola v. United States, 3 Cir., 72 F.2d 780, 784; Stillman v. United States, 9 Cir., 177 F.2d 607, 617. See Shapiro v. United States, 335 U.S. 1, 32 et seq., 68 S.Ct. 1375, 92 L.Ed. 1787.

2. See United States v. Heitner, 2 Cir., 149 F.2d 105, 107.

3. Perrin v. United States, 9 Cir., 169 F. 17, 24, 26; York v. United States, 9 Cir., 241 F. 656; 22 C.J.S., Criminal Law, § 660, page 1043; 20 Am.Jur., Evidence, Sec. 551, p. 464; see also note following Commonwealth of Massachusetts v. Britland, 300 Mass. 492, 15 N.E.2d 657, 118 A.L.R. 132, 138.

virtual admission of guilt and at the very outset of the trial proved that remittance by the first witness, thus striking a well nigh fatal first blow against the defendant. It was not until the seventh day of the trial that the court permitted the defendant to testify that the indictment was the first notice he had of the amount of taxes owed, and that he would have paid such taxes before had the government notified him of the amount. He never was permitted to testify that he wrote and mailed the explanatory letter along with the remittance. When considered by the jury in the light of the defendant's interest in the verdict, his testimony may have been disbelieved, while the jury may have given weight to the statement accompanying the remittance. Considering the letter and the remittance together as parts of one entire transaction the jury may well have rejected any inference of the defendant's bad faith in not having paid the taxes earlier. Failure to reject that inference originally may not have been cured by testimony of the defendant in rebuttal of the inference. It would be just as logical it seems to me to argue that error in admitting an illegal confession was rendered harmless by permitting the defendant to testify in denial of the statements contained in the confession.

Every claim that an error was harmless must be decided according to the circumstances of the particular case, and precedents are rarely if ever controlling. However, the situation considered in Crawford v. United States, 212 U.S. 183, 201, 29 S.Ct. 260, 267, 53 L.Ed. 465, is remarkably similar to this case: "* * * The defendant did on the trial testify to the same explanation as contained in the letter of his counsel, i. e., that Aspinwall in substance consented to the taking of the letters, but it is doubtful if such evidence cured the error of excluding the letter, written at once after the accusation was made and long before the trial, in which letter he admitted and explained the taking, showing it was from

no desire to suppress evidence, but, on the contrary, to preserve it."

In holding an error harmless, the Court should be careful not to substitute its judgment for that of a jury, and thus in effect to deny the defendant's right to trial by jury. I cannot with fair assurance say that if the jury had been allowed to consider the letter it might not have reached a different verdict.[4]

The holding in this case is important also because of its probable effect upon the collection of revenue by the government. Taxpayers may be slow to remit delinquent taxes when the fact of such remittance may be used in evidence against them, while their explanation of the delinquency made at the time of remittance is excluded from evidence.

I think that the case should be reversed and remanded for another trial, and therefore respectfully dissent.

---

4. Kotteakos v. United States, 328 U.S. 750, 763, 66 S.Ct. 1239, 90 L.Ed. 1557; Fiswick v. United States, 329 U.S. 211, 218, 67 S.Ct. 224, 91 L.Ed. 196; Krulewitch v. United States, 336 U.S. 440, 444, 69 S.Ct. 716, 93 L.Ed. 790; see Federal Rules of Criminal Procedure, Rule 52(a), 18 U.S.C.A.