COMMONWEALTH *vs.* LEE J. SCHNACKENBERG.

Suffolk.    February 3, 1969. — May 29, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, &
REARDON, JJ.

*Grand Jury.* *Practice, Criminal,* Grand jury proceedings. *Massachusetts
Crime Commission. Constitutional Law,* Separation of powers. *Error,*
Whether error harmful. *Evidence,* Hearsay, General objection to ad-
mission of evidence. *Larceny. False Pretences. Conspiracy.*

There was no error at a pre-trial hearing on pleas in abatement to indict-
ments in the exclusion of a question to the prosecutor as to whether,
during a conference between him and his assistants in the grand jury
room, the evidence in connection with the indictments had been dis-
cussed where it appeared that the grand jury were not present in the
room during the conference and that the prosecutor had already
testified that the evidence had not been discussed [67]; or in the
exclusion of questions to establish that certain of the assistants "had
disclosed to strangers testimony which had been given in the grand
jury room" [67–68]; or in the exclusion of questions to the prosecutor
to show that his assistants had "made factual comments on the evi-
dence" to the grand jury where it appeared that the judge specifically
said that counsel could ask the prosecutor whether he had "made
statements without taking the witness stand" [68]; or in the exclusion
of questions to establish that the "secrecy" imposed by c. 146 of the
Resolves of 1962 upon the proceedings of the Massachusetts Crime
Commission had been violated [68–69].
Without merit was a contention in support of pleas in abatement to in-
dictments that conduct of the Massachusetts Crime Commission, a
legislative agency, usurped the executive functions of the Attorney
General and thereby violated art. 30 of the Declaration of Rights of the
Massachusetts Constitution. [69]
At the trial in 1967 of an indictment for larceny from the Massachusetts
Turnpike Authority in 1960 against one who had been Secretary-
Treasurer of the authority in that year, there was no error prejudicial
to the defendant in permitting the Secretary-Treasurer of the au-
thority at the time of the trial to be asked what his duties then were
where his answer was general in nature and defence testimony con-
firmed that the duties of both officers were similar. [69–70]
At the trial of indictments for larceny and conspiracy to commit larceny
from the Massachusetts Turnpike Authority through its payment for
work done at the defendant's home by a corporate codefendant, there
was no error, after the president of the corporation had testified as a

witness for the Commonwealth about a conversation on a certain subject which he had had with the chairman of the authority, in the exclusion on direct examination of the defendant of questions about a conversation on the same subject which he had had with the chairman. [70–71]

Where a witness at the trial of an indictment was permitted to read to the jury his testimony before the grand jury and on cross-examination it became apparent that part of such testimony was based on his personal knowledge and was admissible and part was not, and the judge stated that he would exclude and instruct the jury to disregard all parts of the testimony which were not based on personal knowledge of the witness and invited the defendant to point out such parts, there was no error in the denial of a motion the defendant then made to strike out all the testimony of the witness before the grand jury. [72]

Evidence at the trial of indictments for larceny by false pretences and conspiracy to commit larceny from the Massachusetts Turnpike Authority warranted a conclusion that the defendant, an officer of the authority at whose home work was done by a corporate codefendant upon his request to its president, named as coconspirator, knew that the corporation would furnish false information to the authority to the effect that the work had been done for the authority, and where it appeared that the authority relied on such information and paid the corporation for the work, the defendant could properly be found guilty of the crimes charged. [74]

INDICTMENTS found and returned in the Superior Court on April 22, 1965.

Pleas in abatement were heard by *Forte, J.,* and the cases were tried before him.

*Walter J. Hurley* for the defendant.

*Marvin R. Finn,* Assistant Attorney General (*John M. Finn,* Deputy Assistant Attorney General, with him), for the Commonwealth.

SPALDING, J. Lee J. Schnackenberg (hereinafter sometimes called the defendant) was tried on two indictments, one charging larceny by false pretences of more than $100 of the property of the Massachusetts Turnpike Authority (Authority), and the other charging conspiracy to commit larceny of over $100. A codefendant, Highway Traffic Engineers, Inc. (HTE), was joined in each indictment. Two officers of HTE, Thomas D. Connolly and Edgar F. Copell, were named as coconspirators, but not as defendants, in the conspiracy indictment. Verdicts of guilty on both indictments were returned against the defendants Schnackenberg

and HTE.[1] Schnackenberg appealed, the trial having been made subject to G. L. c. 278, §§ 33A–33G. The assignments of error relate to Schnackenberg's pleas in abatement concerning the proceedings before the grand jury,[2] certain rulings on evidence made at the trial, and the denial of his motions for a directed verdict on each indictment.

### PRE-TRIAL MATTERS.

1. At the pre-trial hearing on the pleas in abatement, Marvin R. Finn, one of the assistant attorneys general who presented the case to the grand jury, testified that he was in the grand jury room, along with two other assistant attorneys general, just prior to the convening of the grand jury on the day the indictments were voted and that they discussed only the legal aspects of the indictments. Finn further testified that he had no memory of any of the jurors being present in the room at that time. The following question was then asked and excluded: "Would you say that, in that discussion that you had on that occasion . . . that there was no discussion of the facts or the evidence in connection with the indictments?" The question was properly excluded. Finn had already stated that the evidence had not been discussed. Moreover, even if it had been, the grand jurors would not have been affected, since they were not present during the discussion.

2. The defendant excepted to the exclusion of certain questions which might have established "that certain Special Assistant Attorneys General had disclosed to strangers testimony which had been given in the grand jury room." The

---

[1] The evidence, which will be discussed more fully in part 9 of this opinion, indicated that employees of HTE built an addition to Schnackenberg's garage. HTE, however, submitted to the Authority an invoice and "back-up" material falsely stating that the work done for Schnackenberg had instead been done for the Authority. Thus the Authority, rather than Schnackenberg, paid for the work.

[2] Ordinarily, there can be no appeal from a decision on a plea in abatement. G. L. c. 278, §§ 27 and 33B. However, an appeal will lie if the issues raised by the plea in abatement are based on alleged constitutional rights. *Commonwealth* v. *Favulli*, 352 Mass. 95, 98–99. We shall treat each of the assignments of error on the merits, even though the plea discussed in part 4 of this opinion does not directly involve any constitutional rights.

defendant argues that such disclosures violated the requirement of secrecy imposed upon grand jury proceedings. This requirement, however, has usually been aimed at disclosures by the grand jurors (see G. L. c. 277, §§ 5, 13), although in certain circumstances even grand jurors may relate what occurred before them. *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 307–309. Even if such disclosures were made by the assistant attorneys general, it does not follow that this would invalidate the indictments. "No case has been cited or discovered by us which holds that . . . [disclosure of what witnesses would testify or had testified] is a violation of the secrecy of the grand jury room." *Commonwealth* v. *Geagan*, 339 Mass. 487, 497. See *United States* v. *Hoffa*, 349 F. 2d 20, 43 (6th Cir.).

3. The defendant also excepted to the exclusion of two questions designed to show "that the Special Assistant Attorneys General made factual comments on the evidence to the Grand Jury." As this court recently stated, "In presenting cases to the grand jury the prosecutor and his assistants must scrupulously refrain from words or conduct that will invade the province of the grand jury or tend to induce action other than that which the jurors in their uninfluenced judgment deem warranted on the evidence fairly presented before them." *Commonwealth* v. *Favulli*, 352 Mass. 95, 106. See *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 307–309. But here the exclusion of the questions was not improper, since the judge specifically said that counsel could ask the witness, Mr. Finn, whether he had "made statements without taking the witness stand."

4. The defendant contends that the judge erred "in excluding questions at pre-trial hearing tending to establish that the Grand Jury secrecy imposed upon proceedings of the legislative commission established by c. 146 of the Resolves of 1962" was violated. That chapter provided that "the same provisions with reference to secrecy which govern proceedings of a grand jury shall govern all proceedings of the commission." The defendant's offer of proof was that State police officers, who had been assigned as investigators to the

commission (commonly known as the Crime Commission), were present at formal hearings concerning the activities of the Authority and HTE.

An examination of witnesses by the grand jury in the presence of other witnesses or bystanders violates art. 12 of our Declaration of Rights. *Commonwealth* v. *Harris*, 231 Mass. 584. The presence of assistants to the prosecutor does not, however, contravene the established grand jury procedures guaranteed by art. 12. *Commonwealth* v. *Favulli*, 352 Mass. 95, 104. It is not clear from the offer of proof that the police officers were unauthorized strangers rather than assistants. See *Commonwealth* v. *Geagan*, 339 Mass. 487, 496–497. Furthermore, the offer of proof does not demonstrate any connection between Schnackenberg and the hearings in question. But even if we assume that unauthorized persons were present at the Crime Commission's hearings, this would not be a ground for dismissing the indictments, for the indictments were returned by the grand jury, not by the commission. Thus they would not be invalidated by the alleged irregularity in the commission's proceedings.

5. The remaining contention in support of the pleas in abatement is that the conduct of the commission, a legislative agency, usurped the executive functions of the Attorney General and thereby violated the doctrine of the separation of powers, as found in art. 12 and art. 30 of our Declaration of Rights. This contention is answered by our decisions in *Attorney Gen.* v. *Brissenden*, 271 Mass. 172, 183–184, *Sheridan* v. *Gardner*, 347 Mass. 8, 16–18, and *Commonwealth* v. *Favulli*, 352 Mass. 95, 100–103, which demonstrate that there was no such violation. In regard to pre-trial matters numbered 3, 4, and 5, the opinion is that of a majority of the court.

## The Trial.

6. The Commonwealth, over the defendant's objection, was allowed on direct examination to ask Stanley Britton, the Secretary-Treasurer of the Authority at the time of the trial, what his duties were at that time. Schnackenberg

argues that Britton's response was inadmissible because it was not shown that his duties in 1967 were the same as Schnackenberg's in 1960, the year relevant under the indictments. Even if we assume that the judge erred in allowing the question, the defendant was not prejudiced. Britton's answer was quite general in nature and not harmful to the defendant. Moreover, the testimony of Schnackenberg and two other witnesses called by the defence confirmed that the procedures followed by Britton were similar to those followed by Schnackenberg in 1960.

7. The details of the circumstances which led HTE to do work at Schnackenberg's home were significant aspects of the charges against him. Edgar F. Copell, the president of HTE, testified for the Commonwealth that in a conversation he had with Callahan (the chairman of the Authority), the latter stated that he needed Schnackenberg's services but that Schnackenberg wanted time off to work around his home. Callahan then asked Copell to go out to see what had to be done at Schnackenberg's house. During Schnackenberg's direct examination by the defence counsel the following colloquy occurred: Q. "You did not get the vacation. And was there a reason given you by Mr. Callahan for that?" THE JUDGE: "We will exclude that." Q. "Did you tell Mr. Callahan you needed a vacation for a particular purpose?" MR. FINN: "Objection." THE WITNESS: "No, sir." THE JUDGE: "Excluded." MR. HURLEY: "My exception, please." THE JUDGE: "Yes."

Schnackenberg argues that both of the excluded questions were permissible solely on the ground that the general subject had been raised by the Commonwealth. But it does not follow that because the Commonwealth introduced hearsay statements, to which there was no objection, the defence then may similarly introduce such testimony over proper objections. See *Parker* v. *Dudley,* 118 Mass. 602, 605. Reliance is placed on the statement in *Commonwealth* v. *Britland,* 300 Mass. 492, 495–496, that where "the prosecution introduces statements of the defendant, tending to show that he is guilty . . . he may on cross-examination elicit

from the witnesses for the prosecution the whole of the subject matter, even though statements so drawn out are favorable to him." But this principle does not aid the defendant. In the case at bar, unlike the situation in the *Britland* case, the prosecution's witness, Copell, did not testify about statements made to him by Schnackenberg, and the excluded questions did not refer to the same conversation about which Copell had testified.[3] There thus was no violation of the familiar rule that "whenever the statements, declarations or admissions of a party are made subjects of proof, all that was said by him at the same time and upon the same subject is admissible in his favor, and the whole should be taken and considered together." *Commonwealth* v. *Keyes,* 11 Gray, 323, 324.

8. Copell was permitted to read to the jury part of the transcript of his testimony before the grand jury. The defendant objected to the reading of the first question and answer, but did not object to the reading of the other questions and answers. On cross-examination by the defendant, Copell was asked whether his testimony before the grand jury was based on his personal knowledge and he answered that it was not. The following then occurred: THE JUDGE: "The parts that were not based upon his personal knowledge are to be excluded and I am going to instruct the jury to disregard it. I am going to invite you to call it to the attention of the jury so they will know what they are to disregard." DEFENCE COUNSEL: "I was just going to ask the witness to point out to me which answers he gave were not of his personal knowledge." THE JUDGE: "Those I shall exclude."

The defence counsel, apparently accepting the judge's invitation, then referred to the first question and answer, which were struck when Copell said that the subject matter was not within his own knowledge. After a reference to the second question and a discussion among the attorneys, the judge, and the witness, the judge ruled that all the answers

---

[3] Copell testified about a conversation he had with Callahan, whereas the excluded questions concerned a conversation between Callahan and Schnackenberg.

which could be interpreted to be of Copell's personal knowl-
edge could stand, but that the statements beginning with
"I suppose so" or "I assume" would be struck.

The cross-examination then proceeded as follows: Q. "Did
you limit your testimony . . . [before the grand jury] to
your own personal knowledge?" A. "I did not." Q. "Were
you testifying from matters you had learned from talking
with other persons outside of the room?" A. "From other
men of the Highway Traffic Engineers." Q. "And you were
testifying to information they had given you?" A. "That
is right." Q. "And you didn't know those to be facts?"
A. "I did not." . . . DEFENCE COUNSEL: "If I may, your
Honor, I move to strike the entire —" THE JUDGE: "Move
to strike all those parts that appear not to be of his personal
knowledge. The rest may stand." DEFENCE COUNSEL:
"May I have an exception to that ruling, and may I make a
further move to strike specifically the parts which say, 'I
assume' and 'I suppose'?" THE JUDGE: "Yes, those I
allow and I allow your objection and exception. I am going
to exclude them and ask the jury to disregard them."

The objection to the testimony apparently was based not
on a claim that part of it was hearsay but rather on Copell's
lack of personal knowledge of the subject matters being dis-
cussed. It is apparent from the transcript, as the judge had
reason to believe, that part of Copell's testimony before the
grand jury was based on his personal knowledge. Defence
counsel was invited, and in fact started, to discover and
point out the parts that were not. In these circumstances,
the objection to the evidence as a whole, some of which was
admissible, was properly denied. See *Solomon* v. *Dabrowski,*
295 Mass. 358, 359.[4]

9. Finally, the defendant urges that his motions for di-
rected verdicts at the close of the Commonwealth's case and
at the close of all the evidence should have been granted on

---

[4] In his brief, the defendant, relying on *Pointer* v. *Texas,* 380 U. S. 400, and
*Douglas* v. *Alabama,* 380 U. S. 415, also argued that he was denied his con-
stitutional right of confrontation. It is clear, however, that this was not the
basis of the objections at the trial, and this ground therefore is not open in
this court. *Commonwealth* v. *Geagan,* 339 Mass. 487, 515.

both the larceny by false pretences and the conspiracy indictments. The evidence would have warranted the following findings: Schnackenberg asked Copell to have some work done at Schnackenberg's home by employees of HTE. He wanted the work done while his neighbor was away because he did not want him to see who did the job. The work was done by HTE's maintenance crew, which was almost always assigned to work on the turnpike. The foreman of the crew was instructed by his superior, Connolly, not to bring HTE's trucks to Schnackenberg's house and to inform the members of the crew not to tell anyone that they were employed by HTE while they were working on the Schnackenberg job. On the one occasion that an HTE truck was parked in front of the house, the name on the truck was disguised. Schnackenberg called Copell twice because the work was not done promptly and later complained that the paint did not match. Schnackenberg never paid for the work, never asked for a bill, and never expected to receive one. HTE, however, submitted to the Authority an invoice and "back-up" material containing false information that the work done for Schnackenberg had instead been done for the Authority. In reliance on the false information, the Authority paid HTE the amount of the invoice, minus certain deductions.

The offence of larceny by false pretences requires a false representation known by the defendant to be false and made with the intent that the alleged victim rely on it. *Commonwealth* v. *Monahan*, 349 Mass. 139, 150. *Commonwealth* v. *Hamblen*, 352 Mass. 438, 442. Schnackenberg contends that the element of scienter on his part did not exist. But the jury could infer that he knew that false information would be furnished by HTE to the Authority. "A jury may find a crime proved beyond a reasonable doubt even though the inference of guilt from the facts established is not inescapable or necessary. There is a case for the jury unless the inference either is forbidden by some special rule of law or is unwarranted because too remote according to the ordinary course of events." *Commonwealth* v. *Ehrlich*, 308 Mass. 498,

500. Since there was sufficient evidence for the jury to conclude that Schnackenberg had the requisite knowledge for the offence of larceny by false pretences, the motion for a directed verdict was properly denied. See *Commonwealth* v. *Monahan*, 349 Mass. 139, 152–153.

The motion for a directed verdict on the conspiracy indictment also was properly denied. "A conspiracy may be proved by circumstantial evidence of concerted action toward the accomplishment of a common purpose. *Attorney General* v. *Tufts*, 239 Mass. 458, 493, 494." *Commonwealth* v. *Galvin*, 310 Mass. 733, 745–746. Circumstances must be shown from which a reasonable inference can be drawn that the defendant participated in the particular conspiracy charged. *Commonwealth* v. *Benesch*, 290 Mass. 125, 131. We are of opinion that the evidence was sufficient to show that Schnackenberg participated in the conspiracy to commit larceny from the Authority. See *Commonwealth* v. *Beal*, 314 Mass. 210, 221–223. *Commonwealth* v. *Monahan*, 349 Mass. 139, 153–154.

*Judgments affirmed.*