## COMMONWEALTH vs. CHARLES C. MURPHY.

Suffolk.    March 13, 1978. — May 11, 1978.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Constitutional Law*, Confrontation of witnesses. *Evidence*, Admissions
   and confessions, Hearsay, Relevancy and materiality, Record of
   past knowledge. *Practice, Criminal*, Trial of defendants together.
   *Search and Seizure.*

Severance of a defendant's criminal trial from that of a codefendant
   was not constitutionally compelled by the doctrine of *Bruton* v.
   *United States*, 391 U.S. 123 (1968), by reason of the admission in
   evidence of damaging extrajudicial remarks made by both men
   after they had voluntarily relinquished their Miranda rights,
   where the codefendant testified at the trial, denied making the
   damaging statement, and was available for cross-examination con-
   cerning it, and where the remarks were directly admissible against
   the defendant under the adoptive admission exception to the hear-
   say rule [339–341]; nor, in these circumstances, did an abuse of
   discretion appear [341].
At a criminal trial no abuse of discretion appeared in the exclusion of
   testimony by the defendant as to a statement allegedly made by a
   police officer to him and a codefendant, offered for the limited
   purpose of qualifying the meaning of subsequent admissions which
   had been described in the testimony of a second police officer con-
   cerning a conversation with the defendant and codefendant four
   hours later. [341–343]
At the trial of indictments for rape, kidnapping, and robbery there
   was no error in the exclusion from evidence of a police journal
   entry, which could be viewed as contradicting a police officer's
   testimony that the victim had given him a specific description of
   her assailants, where testimony already received had advised the
   jury of the omissions from the description that the defendant con-
   sidered significant. [343–344]
Admission of testimony referring to the victim's identification of a
   jacket belonging to a criminal defendant was proper notwithstand-
   ing the circumstances that the jacket had been taken from the
   defendant with neither his consent nor a search warrant while he

was in custody on unrelated charges, since, at the time of the seizure, the police had probable cause to arrest him for the crimes to which the identification related. [344–345]

INDICTMENTS found and returned in the Superior Court on February 18, 1975.

The cases were tried before *Zarrow, J.*

*Frank S. Ganak (Paul M. Hoffman* with him) for the defendant.

*Frances M. Burns,* Assistant District Attorney *(Joseph S. Ayoub, Jr.,* Special Assistant District Attorney, with her) for the Commonwealth.

HALE, C.J. The defendant, Charles C. Murphy, was tried along with a codefendant, Eugene J. Zarella, Jr., before a jury in the Superior Court, and both were found guilty on charges of rape (by sexual intercourse and by unnatural sexual intercourse), kidnapping and robbery. Murphy appeals and assigns error in several of the judge's rulings, including his refusal to sever the proceedings against the two defendants, as well as other rulings on the admission or exclusion of evidence at the joint trial. Those assignments of error not briefed and argued by the defendant are deemed waived. Rule 1 : 13 of the Appeals Court, as amended, effective February 27, 1975, 3 Mass. App. Ct. 801.

At about 9:00 A.M. on November 16, 1974, the victim left her apartment on Commonwealth Avenue in Brighton, accompanied by her roommate. As the two women walked along Warren Street in Brighton they were passed by a red Volkswagen sedan. The automobile stopped, and a man, later identified by the victim as Murphy, alighted and approached the women. Murphy demanded that the women hand over all of their money, and they complied. At that moment the Volkswagen turned around and pulled up next to the women. The driver, later identified by the victim as Zarella, demanded that the women get in. As Murphy grabbed the victim by the arm and forced her into the automobile, the victim's roommate backed away and screamed. Murphy got

into the automobile, and the automobile pulled away. The roommate immediately went to a nearby liquor store and phoned the police.

Zarella drove the Volkswagen from Brighton to Lexington. During the ride, which lasted about forty minutes, Zarella and Murphy smoked cigarettes and passed a bottle of wine between themselves. Zarella eventually drove into a cemetery in Lexington and stopped. The two men then stripped the victim and repeatedly raped her. After both men had sexually abused the victim for a period of about an hour and a half, they left her on the ground, got into the Volkswagen, and drove away. The victim then made her way to a house near the cemetery, where she was given assistance and the Lexington police were contacted.

At about 11:30 that night there was an automobile accident on Park Drive in Boston. One of the automobiles involved in the accident was a red Volkswagen sedan with two male passengers. After the accident the two men removed the license plates and other, unidentified, objects from the Volkswagen and ran off. Soon afterward two Metropolitan District Commission (M.D.C.) police officers arrived at the scene of the accident. The officers arranged for the Volkswagen to be towed to the garage a the M.D.C. police lower basin station. The officers found a wine bottle on the front seat of the Volkswagen.

At about 3:00 A.M. on November 17, 1974, two M.D.C. police officers observed a van being driven along a section of Park Drive in Boston which was about one-half mile from the scene of the earlier accident involving the Volkswagen. The officers noticed that the van had paper license plates and that its rear lights were out, They stopped the van and arrested the occupants, Zarella and Murphy. Zarella and Murphy were given Miranda warnings and transported to the M.D.C. lower basin station. At the station they were again provided with Miranda warnings and booked on charges of using a motor vehicle without authority and possession of burglarious tools. They

were placed in adjoining cells in the basement of the station.

Later on the morning of November 17, 1974, two Boston police officers went to the apartment where the victim was staying. They showed her a display of about twelve photographs of white males, and she selected a photograph of Murphy from that group and identified him as one of the men who had raped her. Zarella's photograph was not included in the display. The officers left after the identification was made. At about 9:00 that morning another member of the Boston police, Officer Moran, went to the victim's apartment and showed her the same set of photographs. She again selected the photograph of Murphy.[1] She also described the two men to Officer Moran, stating that both men had been wearing leather jackets and that one man had worn a belt with a large brass buckle.

Later that morning Officer Moran brought the victim and her roommate to the M.D.C. lower basin station. The women saw the red Volkswagen sedan which had been towed to the station garage and identified it as the automobile involved in the crimes. The victim pointed to certain items on the floor of the rear seat of the automobile and identified them as hers. Officer Moran left the women and went into the cell area of the station, where he obtained leather jackets owned by Murphy and Zarella and a belt which had been worn by Zarella. Upon returning to the garage he showed those items to the victim. She identified them as having been worn by the men who had raped her. The officer then returned the jackets to Murphy and Zarella and informed them that he was charging them with rape, robbery and kidnapping, and recited the Miranda warnings to them.

---

[1] The victim later made additional photographic identifications of both Murphy and Zarella. Her roommate independently identified a photograph of Zarella. Both women separately picked Murphy and Zarella out of a lineup of twenty to twenty-five males. Both women identified Murphy and Zarella at trial.

When Officer Moran entered the police station to get the jackets and belt, he was met by an Officer McDermott. McDermott was present in connection .with an investigation of a robbery of a woman by two men who had been riding in a red Volkswagen. The robbery had occurred the night before in Brookline. McDermott accompanied Moran into the cell area and remained in plain view of the defendants while Moran took away the jackets and belt. McDermott did not speak with the defendants while alone with them because he wanted Moran to be able to complete his phase of the investigation without interference. McDermott testified that as he remained standing silently in the cell area after Moran had informed the defendants of the charges and had left again, Zarella asked him, "Hey, man, did they get our prints off the Wild Irish Rose bottle?" McDermott responded, "I don't know."[2] At that moment Murphy said, "Oh, shit," and placed his head against the wall of his cell and stared at the ceiling. Nothing more was said.

1. The defendant alleges first that the judge erred in denying his motion to sever the proceedings against him from those against Zarella because the introduction of Zarella's statement to Officer McDermott at the joint trial deprived the defendant of his rights under the Sixth Amendment to the United States Constitution as defined in *Bruton* v. *United States*, 391 U.S. 123 (1968). He contends that Zarella's statement constituted a powerfully incriminating admission because it could be viewed both as linking the defendants to the automobile involved in the crimes and as indicating Zarella's consciousness of guilt. The defendant further argues that, although he was not mentioned by name in the statement, Zarella's reference to "our fingerprints" served to incriminate him when considered in connection with the other evidence in the case. *Commonwealth* v. *LeBlanc*, 364 Mass. 1, 8–9

---

[2] The police were ultimately unable to obtain identifiable fingerprints from either the wine bottle or the Volkswagen.

(1973). *Commonwealth* v. *Devlin,* 365 Mass. 149, 155–156 (1974). He concludes that failure to sever the trials under the circumstances was constitutional error. We do not agree.

The conclusion in *Bruton* that severance of codefendants' trials was constitutionally compelled was premised upon two key factors which are absent from the present case. First, the finding in *Bruton* of a violation of the defendant's Sixth Amendment right to confront the witnesses against him, caused by the admission in evidence at the joint trial of a mutually incriminating, extrajudicial confession by his codefendant, was based in part upon the fact that the codefendant had failed to testify at trial and therefore had not been subject to cross-examination. *Bruton* v. *United States,* 391 U.S. at 136. In the present trial Zarella took the stand and denied any involvement in the crimes. He also denied having made the statement attributed to him by Officer McDermott, insisting instead that, "I aked him if he could match up my fingerprints." As Zarella testified favorably toward Murphy at trial and as he was subject to full cross-examination by Murphy's counsel, Murphy was not deprived of any right of confrontation. *California* v. *Green,* 399 U.S. 149, 163 (1970). *Nelson* v. *O'Neil,* 402 U.S. 622, 629 (1971). *Commonwealth* v. *Nolin,* 373 Mass. 45, 50 (1977).

Moreover, the holding in *Bruton* reflected the Court's conclusion that the extrajudicial confession which had been made by the codefendant was clearly inadmissible against the defendant under traditional rules regarding hearsay evidence. *Bruton* v. *United States,* 391 U.S. at 128 n.3. Subsequent holdings have indicated that where a codefendant's statement is directly admissible against the defendant under an exception to the general rule excluding hearsay evidence, admission of that statement at a joint trial does not violate the *Bruton* doctrine, even when the codefendant fails to take the stand. *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 224 (1973). Cf. *Commonwealth* v. *Beckett,* 373 Mass. 329, 337–338 (1977).

In the present case the judge ruled that it was possible for the jury to determine from the evidence that Murphy adopted Zarella's statement. We concur in that ruling. Murphy's utterance and simultaneous actions could be viewed in conjunction with the incriminating aspects of Zarella's statement as "an equivocal reply or one susceptible of being interpreted as an admission or one not likely to be made by an innocent man." *Commonwealth* v. *Curry,* 341 Mass. 50, 54 (1960), quoting from *Commonwealth* v. *Madeiros,* 255 Mass. 304, 313 (1926). We hold, therefore, that the entire exchange was directly admissible against Murphy as an adoptive admission.

We also note that neither Zarella's nor Murphy's statement was made under circumstances which indicated a potential violation of his right to remain silent. Contrast *Commonwealth* v. *Cobb,* 374 Mass. 514, 518 (1978). The defendants had been apprised of their Miranda rights, and their remarks were volunteered without prior questioning or conversation by the police officer. There was ample basis for a finding that their statements were the result of a voluntary relinquishment of their Fifth Amendment rights. See *Commonwealth* v. *Frongillo,* 359 Mass. 132, 135–136 (1971); *Commonwealth* v. *Black,* 4 Mass. App. Ct. 512, 516 (1976). Contrast *Commonwealth* v. *Dustin,* 373 Mass. 612, 613–614 (1977). We conclude that there was no violation of Murphy's constitutional rights by the admission of Zarella's statement or Murphy's response.

Unless severance is found to be constitutionally compelled, a motion to sever rests within the sound discretion of the trial judge. *Commonwealth* v. *McGrath,* 358 Mass. 314, 321 (1970). See *Commonwealth* v. *Clark,* 5 Mass. App. Ct. 673, 677 (1977). The judge's denial of the defendant's motion was not an abuse of discretion.

2. The defendant next assigns as error the judge's exclusion of testimony proffered by Zarella and himself with regard to statements which were allegedly made to them by an M.D.C. police officer during his recording of

their fingerprints and photographs between 5:00 and 5:30 on the morning of November 17, 1974. The officer had been questioned on cross-examination by defense counsel as to whether he had told the defendants that he had obtained fingerprints from the Volkswagen and wine bottle and that he intended to run tests comparing those prints with the defendants' prints. The officer had previously denied making any statement of that nature. Both defendants then testified on direct examination that during their processing the officer had conversed with them on the subject of fingerprints. Neither defendant was permitted to testify to what the officer had allegedly stated.

After the defendant was prevented from testifying to the substance of the officer's alleged statements, his attorney made an offer of proof that if he had been allowed, the witness would have testified that the officer had stated, "We have prints off the Volkswagen and we are going to match them up with yours." Counsel stated that the testimony was offered for the limited purpose of contradicting the officer's testimony. The judge excluded the testimony on relevance grounds.

The defendant now contends that the testimony should have been admitted as it would have served to qualify the meaning of Zarella's and Murphy's subsequent admissions to Officer McDermott. He argues that the force and effect of particular expressions are often affected by the circumstances in which they are uttered. See *Commonwealth* v. *Keyes*, 11 Gray 323, 325 (1858); *Commonwealth* v. *Goddard*, 14 Gray 402, 404 (1860). He concludes that the judge's ruling deprived him of an opportunity to elicit the whole of the subject matter surrounding the defendants' statements while in custody. See *Commonwealth* v. *Britland*, 300 Mass. 492, 495–496 (1938).

The defendant's contentions are based solely on the doctrine that "if one party puts in evidence a part of the admissions or conversations of the other, the latter is entitled to produce, or draw out by cross-examination, testimony concerning all that was said upon the occasion

referred to." *Commonwealth* v. *Britland, supra* at 496, quoting from *Commonwealth* v. *Goddard, supra* at 404. We find that doctrine to be inapposite to the consideration of the testimony proffered in this case. The statement which the defendant sought to admit was not part of any conversation either defendant had had with Officer McDermott. The alleged statement had been made instead by a third party during a conversation between the defendants and that person approximately four hours prior to their conversation with Officer McDermott. Compare *Commonwealth* v. *Schnackenberg*, 356 Mass. 65, 70–71 (1969). The entire exchange between the defendants and Officer McDermott was already before the jury. As the testimony proffered by the defendants did not pertain to that conversation, the defendant's contention must fail. See *Commonwealth* v. *Keyes, supra.* We find no abuse of discretion in the judge's exclusion of the testimony for the limited purpose for which it was offered.

3. The defendant contends next that the judge erred in refusing to allow a Lexington police officer to read in evidence a portion of a police journal entry which contained an account of the officer's initial interview with the victim. The journal entry, which was handwritten by the testifying officer on the night of November 16, 1974, contained a description of the assailants as "two white males between 20–25 years of age." The defendant argues that that portion of the journal entry should have been allowed in evidence because the vague description contained therein could be viewed as contradicting the officer's testimony that in her initial interview the victim had specifically described her assailants.

The judge did not err in refusing to allow the journal entry to be read in evidence. During cross-examination the officer read the journal entry to himself and stated that his recollection of the victim's description of her assailants during her initial interview with him was refreshed. He thereafter testified to that recollection independently of the memorandum. See *Bendett* v. *Bendett,*

315 Mass. 59, 63 (1943); *Fisher* v. *Swartz*, 333 Mass. 265, 267 (1955); Leach & Liscos, Massachusetts Evidence 81 (4th ed. 1967). Defense counsel elicited the officer's admission that his entry in the police journal did not contain specific descriptions of the assailants' height, hair color, facial hair or scars. The defendant was not prejudiced by the exclusion of the journal entry, as the jury had already been advised of the omissions which the defendant deemed significant in the description included therein. See *Commonwealth* v. *Melanson*, 3 Mass. App. Ct. 108, 111–112 (1975); *Commonwealth* v. *O'Neil*, 3 Mass. App. Ct. 768 (1975).

4. The defendant objects lastly to the judge's denial of his motion to suppress evidence of the victim's identification of his jacket while he was held in custody at the M.D.C. police station. Although the jacket was not entered in evidence by the Commonwealth, the defendant claims that he was harmed in the eyes of the jury by the reference to the victim's identification of the jacket. He argues that the testimony should have been excluded because the jacket had been seized in violation of his rights under the Fourth Amendment to the United States Constitution. In support of this argument the defendant notes that his jacket was taken with neither his consent nor a search warrant. Although he admits that the warrantless seizure of an individual's clothing may be considered as a reasonable, hence constitutional, search when made while he is in custody following his arrest (*United States* v. *Edwards*, 415 U.S. 800, 806 [1974]; *Commonwalth* v. *Appleby*, 358 Mass. 407, 413 [1970]), he argues that the seizure in this case cannot be so justified because it was effected solely to obtain evidence of crimes which were unrelated to those charges for which he was then under arrest.

The defendant was in custody at the time that Officer Moran displayed the jacket to the victim. Although he had not been formally charged with the crimes involved in this case, the police had focused their investigation of

those crimes on the defendant. We hold that at the time of the seizure the police had probable cause to arrest the defendant for those offenses. We reach this conclusion because prior to the seizures: (a) the victim had twice selected the defendant's photograph from a display and identified him as one of the men who had raped her, (b) the victim's descriptions of the two rapists fit the defendant and Zarella, and (c) the victim had identified the Volkswagen, which was involved in an accident near the location of the defendants' arrest, as the automobile involved in her abduction. The seizure of the defendant's jacket was reasonable under the circumstances and did not result in any deprivation of the defendant's Fourth Amendment rights. See *Commonwealth* v. *Tarver*, 369 Mass. 302, 309–310 (1975); *Commonwealth* v. *Walker*, 370 Mass. 548, 559 n.8, cert. denied, 429 U.S. 943 (1976).

*Judgments affirmed.*